UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID C. HARDY,

       Plaintiff,

Case No.:  04-CV-73397

HON. NANCY G. EDMUNDS
vs.                                    MAG. JUDGE WALLACE CAPEL, JR.

DEPUTY SCHILLING, OFFICER BELLING,
OFFICER HIMMELSPACH, JR., OAKLAND
COUNTY, and WATERFORD TOWNSHIP,

       Defendants.
                                        /

## REPORT AND RECOMMENDATION

**I.   INTRODUCTION**

On August 31, 2004, Plaintiff filed this lawsuit against Defendants Schilling, Belling, Himmelspach, Oakland County, and Waterford Township. On October 28, 2004, the Honorable Nancy Edmunds, United States District Judge, entered an Order dismissing all of Plaintiff's state law claims of false arrest, false imprisonment, assault and battery, and intentional infliction of emotional distress. She also ordered Plaintiff to file an amended complaint on or before November 17, 2004, which complied with Federal Rule of Civil Procedure 8, or his claims under the First Amendment would be dismissed.

On November 17, 2004, Plaintiff filed an Amended Complaint pursuant to 42 U.S.C. § 1983 against the same Defendants raising claims of excessive force, malicious prosecution, and racial discrimination. Plaintiff claimed that Waterford Township and Oakland County failed to properly investigate his claims of excessive force, and that they have had a long standing practice of failing

to investigate and punish the use of excessive force by officers. He also alleged that the County and Township had a custom or practice of using and authorizing the use of excessive force. Finally, he claimed that the County and Township failed to properly train and supervise their officers.

Pending before the Court is "Defendants' Motion for Summary Judgment," filed August 23, 2005, and "Motion For Summary Judgment By Deputy Schilling and Oakland County," filed August 25, 2005.

## II.   LAW

### A.   Summary Judgment

Under Fed.R.Civ.P. 56(c), summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." In essence, Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. Bender v. Southland Corp., 749 F.2d 1205, 1210-1211 (6th Cir. 1984). However, the Court is not permitted to judge the evidence or make findings of fact. Ivy Street Corporation v. Alexander, 822 F.2d 1432, 1435 (6th Cir. 1987).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. This burden may be discharged by showing there is an absence of evidence to support the nonmoving party's case. Celotex Corp., 477 U.S. at 325. Once the moving party discharges this

burden, it then shifts to the nonmoving party to present specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e). To create a genuine issue of material fact, the nonmoving party must produce evidence sufficient to require submission of the issue to a jury. Lucas v. Leaseway Multi Transp. Serv. Inc., 738 F.Supp. 214, 217 (E.D. Mich, 1990).

### III.   ANALYSIS

#### A.   Defendants Schilling and Oakland County

Defendant Schilling argues that he is entitled to summary judgment as to Plaintiff's state law claim of false arrest and false imprisonment, because he had probable cause to arrest Plaintiff based on a valid Friend of the Court warrant, and upon information conveyed by the Law Enforcement Information [LEIN] system.

Defendants' argument is moot. Plaintiff's state law claims, including false arrest and false imprisonment, were dismissed by order of the district court on October 28, 2004. In his second argument, Defendant Schilling argues that he is entitled to summary judgment on the excessive force claim based on the doctrine of qualified immunity.

All claims that law enforcement officers have used excessive force, in the course of an arrest, investigatory stop, or other seizure of a free citizen, are to be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989). "Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396, 109 S.Ct. 1865 quoting United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637 (1983). A reviewing court "should pay particular attention to "the severity of the crime at issue, whether the

3

suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Kostrzewa v. City of Troy, 247 F.3d 633, 639 (6th Cir. 2001) (quoting Graham, 490 U.S. at 396). In evaluating an excessive force claim, "[t]he 'reasonableness' of the particular use of force must be judged from the perspective of a reaonsable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396, 109 S.Ct. 1865. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, incertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Id. at 396-97, 169 S.Ct. 1865.

To determine whether a police officer is entitled to qualified immunity from a suit alleging a violation of a constitutional right, the court must address two questions. First, the court must determine whether based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. Saucier v. Katz, 533 U.S. 194, 200, 121 S.Ct. 2151 (2001). Next, the court must determine "whether the right was clearly established" when the violation occurred. Id. at 201. A right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202.

Defendant Schilling in his statement of facts states:

> On July 1, 2002, Oakland County Sheriff's Deputy Jason Schilling was in the parking lot of the Summit Place Mall when he observed a car park in a marked handicapped space near the entrance to the J.C. Penney store. (Exhibit 1, Incident/Narrative report). He noted that the people exiting the car were a young man and a young girl who had no apparent handicap. He also noted that the man who had parked the car looked at the Deputy twice while walking in and seemed nervous. (Exhibit 1). Deputy Schilling went to the car parked in the handicapped spot, noted a handicapped permit and ran the number through the Law Enforcement Information Network

4

(LEIN). The registration came back to an elderly woman and since neither of the two occupants matched that description, Deputy Schilling was going to issue a handicap permit violation ticket. (Exhibit 1).

As Deputy Schilling was writing out the citation, the occupants returned to the car. (Exhibit 1). The Deputy asked the young man for his operators license so he could issue a citation. (Exhibit 1). Plaintiff accused the Deputy of being a racist and profiling him. (Exhibit 1). He told the Deputy that the Deputy did not need his license in order to issue a ticket for parking and continued to stall in giving the Deputy his license. (Exhibit 1). Plaintiff finally turned over his license and Deputy Schilling ran the license through LEIN. While Plaintiff's driving record came back as clear, he had a 6th Circuit Friend of the Court (FOC) bench warrant out for his arrest. (Exhibit 1 and Exhibit 3, Bench Warrant).

Deputy Schilling confirmed that the warrant was valid through LEIN and then approached Plaintiff and advised him that he was under arrest on the FOC warrant. (Exhibit 1). Plaintiff advised the Deputy that the warrant was not valid. (Exhibit 1). Deputy Schilling told Plaintiff that he was going to take him to the Friend of the Court and if the warrant was a mistake, it would be cleared up. (Exhibit 1). Plaintiff refused and continued to argue with the Deputy as the Deputy asked him to place his hands on the vehicle so he could be handcuffed. Plaintiff refused and as the Deputy attempted to grab Plaintiff, he pulled away. (Exhibit 1). The Deputy pulled out his pepper spray and instructed Plaintiff that he either needed to cooperate in being arrested or he was going to be sprayed. (Exhibit 1). Plaintiff stated that the warrant was a mistake and he was not going. He ran as the Deputy discharged his can of pepper spray. Plaintiff ran toward the J.C. Penney entrance. The Deputy grabbed Plaintiff as he was attempting to enter the store and they struggled in the entranceway. Plaintiff continued to resist and tried pull away. The Deputy used his pepper spray another time, but Plaintiff continued to resist arrest by actively fighting and wrestling with the Deputy. (Exhibit 1). The Deputy used common reasonable force techniques, such as knee-strikes to the Plaintiff's thighs and open-hand stuns to the head. Plaintiff still refused to give up and continued struggling. Finally, Plaintiff pulled away and ran.

By this time, Waterford Police officers had responded to a call for assistance. They noted Plaintiff running away from Deputy Schilling and then saw Plaintiff turn and take a "fighting position" facing Deputy Schilling. (Exhibit 2, Waterford Police Report/Narrative Report). One of the Waterford officers then tackled Plaintiff. (Exhibit 2). Even then, Plaintiff continued to fight and

> resist arrest. (Exhibit 2). Finally, he was successfully handcuffed and arrested. Plaintiff was transported to the North Oakland Medical Center emergency room to be examined for any potential injuries. (Exhibit 1). He was medically cleared for lodging in the Jail, and he was transported to the Jail with charges of Resisting and Obstructing Arrest and the FOC warrant. (Exhibit 1).[1]

Plaintiff's version of the events differs from Defendant Schillings'. According to Plaintiff:

> Once Deputy Schilling received word that a warrant existed, he put on some "black gloves" and proceeded to my door (driver's side). He snatched the door open and stated, . . . "step out of the car. . ."

Deputy Schilling never mentioned I was under arrest for a Friend of the Court warrant. I do remember his stating. . . . FOC. . . .FOC. . . ."
The second I stepped out of the car, Deputy Schilling came across the back of my neck with his "forearm." Plaintiff further claims:

> "Answering #8. . . after the 2 Waterford police officers arrived, I was running towards them **(not away from them), because I felt Deputy Schilling was seriously trying to hurt me. . .**
> I stopped directly in front of the other police vehicles (there was numerous), Officer Belling jumped out and tackled me **(on my deposition, I stated that I could not identify any of the Waterford police officer...after much thought, I'm positive, I can identify Officer Belling...),** Officer Belling and Officer Himmelspach proceeded to beat me (basiclly, all over my body) **THE SUMMIT PLACE MALL SURVEILLANCE TAPE WOULD VERIFY THIS**
> At this point, Deputy Schilling had caught up... as I lay on the ground, the 2 Waterford Officers pulled up (I could see that Deputy Schilling had "something" shiny in his right hand... I balled up (in a fetus-position) and then saw Deputy Schilling make a swing across the back of my neck. **As a result of this motion by Deputy Schilling, I was cut on the back of my neck, approximately 6 inch wound... Officer's Belling and Himmelspach just stood there.**
> Once I was placed in the patrol car, **DEPUTY SCHILLING PROCEEDED TO TURN THE "BLOWER-HEATER" ON AS HOT AS IT GETS. (on July 1, 2002, it was over 90 degrees...)**

---

[1] Taken verbatim from the August 25, 2005, "Motion For Summary Judgment by Defendants Deputy Schilling and Oakland County," pages 1-2.

>I was inside the car screaming and trying to kick the window out (**I COULD NOT BREATHE**)[2]

Deputy Schilling and Plaintiffs' versions of the event also differ from Defendant Belling's. In Deputy Schilling's incident report dated July 1, 2002, he claims that Plaintiff resisted his attempts to handcuff him and fled, but does not claim that Plaintiff took a fighting stance, or that Plaintiff attempted to hit or kick him. Defendant also stated that he pulled his ASP baton but reholstered it because he did not want to hit a bystander.

In his report, Defendant Belling claims that he observed Defendant running from Deputy Schilling, and that when he stopped his patrol unit and approached Defendant, he was in a fighting position facing Deputy Schilling, and tried to kick him. Defendant Belling claims that Deputy Schilling than struck Plaintiff twice in the left leg with his ASP.

In this case, viewing the facts in the light most favorable to Plaintiff, the facts alleged would establish the violation of a constitutional right. Plaintiff was not resisting Deputy Schilling at the time that he was struck with something in the back of the neck while "balled up in a fetus position." The Sixth Circuit has repeatedly stated that "the right to be free from excessive force is a clearly established Fourth Amendment right." Neague v. Cynkar, 258 F.3d 504, 507 (6th Cir. 2001).

The court has also consistently held that various types of force applied after the subduing of a suspect are unreasonable and a violation of a clearly established right. See Phelps v. Coy, 286 F.3d 295, 301 (6th Cir. 2002). ("There was simply no governmental interest in continuing to beat Phelps after he had been neutralized, nor could a reasonable officer have thought there was."); McDowell v. Rogers, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[A] totally gratuitous blow with a

---

[2]Plaintiff did not use page numbers in his October 19, 2005, "Plaintiff's Answer to Summary Judgment," so the undersigned is citing from "page 7."

policeman's nightstick may cross the constitutional line"); it is only reasonable to use force on a person before the person has been arrested, completely restrained, and rendered securely under the control of the police. Cox v. Treadway, 75 F.3d 230, 234 (6th Cir.) cert denied, 519 U.S. 821, 117 S.Ct. 78 (1996).

The second inquiry to be established by the court is whether the right was clearly established when the violation occurred. As previously stated, a right is clearly established if "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201. A reasonable police officer would be aware that it is an excessive use of force to kick or hit a suspect who is already on the ground and not resisting arrest. Phelps, 286 F.3d at 301-02.

Furthermore, I would note that the facts in this case are in dispute. "Where the 'parties dispute virtually all of the essential facts surrounding the excessive force claim, and the evidence proffered by the non moving party would support a conclusion that excessive force was used. . . .the defendants' qualified immunity arguments. . . .may [not] be resolved on summary judgment." Giannola v. Peppler, 1998 WL 96557 (6th Cir. 1998) (quoting Jackson v. Hoylman, 933 F.2d 401, 403 (6th Cir. 1991). I conclude, therefore, that Defendant Singleton is not entitled to qualified immunity.

In their third argument, Defendants argue that the statute of limitations as to the state law claims has expired. This argument is moot based upon the court's Order of October 28, 2004, dismissing the state law claims.

In their fourth argument, Defendant Oakland County argues that no municipal liability exists in this case, based upon the facts as pled. Oakland County cannot be held vicariously liable pursuant to § 1983 for constitutional torts committed by its employees and agents based on the doctrine of

respondeat superior. There is no respondeat superior liability § 1983 for governmental entities. Collins v. Harker Heights, 503 U.S. 115, 121, 112 S.Ct. 061 (1992); Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978). Oakland County may not be sued under § 1983 solely on the basis that an injury has been inflicted by its police officers. "Instead, it is when the execution of a government's policy or custom, whether made by its lawmakers or those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694; Board of County Commr's of Bryan County, Okl. v. Brown, 520 U.S. 397, 403-05, 117 S.Ct. 1382 (1997).

Plaintiff is required to demonstrate that Oakland County, through its deliberate conduct, was the "moving force" behind the alleged deprivation of his federal constitutional rights and injury. Brown, 520 U.S. at 405.

Plaintiff must also show there is a direct causal link between the policy or custom and the deprivation of his federal constitutional rights. Plaintiff is required to prove that his particular injury was incurred because of the execution of the policy or custom. Id. Plaintiff's allegations in this case fail to specify a policy or custom on the part of Oakland County of its officials that caused the constitutional violations complained of.

Plaintiff also asserts a claim against Oakland County for failure to train, and for failure to investigate. In City of Canton, Ohio v. Harris, the Supreme Court held:

> We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact . . . [A] municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train

9

> its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.

489 U.S. 378, 388-89, 109 S.Ct. 1197 (1989).

In Doe v. Claiborne County, Tenn., 103 F.3d 495, 508 (6th Cir. 1996), the Sixth Circuit articulated the requirements for a municipal liability claim made on the basis of an "inaction theory." Under that theory, the plaintiff must show: 1) the existence of a clear and persistent pattern of illegal activity; 2) notice or constructive notice on the part of the [defendant]; 3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and 4) that the [defendant's] custom was the "moving force" or direct causal link in the constitutional violation.

Plaintiff has failed to present any evidence that the Defendant was aware of any prior unconstitutional actions by its employees, or by Defendant Singleton and failed to act. Plaintiff's Complaint merely contains conclusory allegations that Oakland County had inadequate policies to supervise , train, and investigate it's employees. Plaintiff's allegations are not sufficient. A plaintiff must set forth facts showing the existence of an offending custom or policy and mere conclusory allegations are insufficient. Taylor v. Canton, Ohio Police Dept., 544 F.Supp. 783, 788 (N.D. Ohio 1982). Furthermore, Plaintiff has failed to present evidence of a direct nexus between Oakland County's actions or inactions, and the subsequent harm claimed by Plaintiff. I conclude, therefore, that Oakland County is entitled to summary judgment.

**B.      Defendants Belling, Himmelspach, and Waterford Township**

Defendants first argue that the Plaintiff cannot establish a claim against the Defendant officers for a deprivation of his rights under 42 U.S.C. § 1983, in regard to the excessive force and false arrest claims.

The Court would note that Plaintiff does not make a false arrest claim in his Amended Complaint, although he does make a claim for malicious prosecution, which is not addressed by the Defendant. Therefore, I will proceed to Defendants' argument concerning excessive force and qualified immunity.

In this case, Defendants Belling and Himmelspach are not entitled to immunity for the same reasons as addressed in the analysis of Defendant Schilling. Plaintiff alleges that Defendants Belling and Himmelspach tackled him as he stood in front of the police car, and then beat him while he was on the ground and not resisting. As previously stated, these actions would constitute a violation of Plaintiff's right to be free from excessive force and the right was clearly established at the time of the alleged violation. Phelps, 286 F.3d at 301.

Furthermore, Plaintiff claims that the officers stood by while Defendant Schilling hit him with the object which caused the gash in his neck, without attempting to intervene. An officer who does not actively participate in the use of excessive force may nevertheless be held liable if it can be proved that he "owed the victim a duty of protection against the use of excessive force." Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997). A failure to protect can be shown when "the officer observed or had reason to know that excessive force would be or was being used, and the officer had both the opportunity and the means to prevent the harm from occurring." Id.

11

The officers in this case would have reason to believe that the force used by Deputy Schilling was excessive if, as alleged, he struck Plaintiff with an object while he was not resisting.  A question of fact remains as to whether the officers had the opportunity and the means to prevent the harm from occurring.  I conclude, therefore, that Plaintiff has stated a cognizable claim for excessive force against Defendants Belling and Himmelspach, and that they are not entitled to qualified immunity.

Defendant Waterford Township argues that they are entitled to summary judgment because Plaintiff has failed to establish municipal liability.  I agree for the same reasons as stated in the analysis of Plaintiff's claims against Oakland County.  Waterford Township cannot be held liable for the acts of its employees based on the doctorine of respondeat superior.  Collins, 503 U.S. at 121.  Plaintiff has failed to specify a policy or custom on the part of Waterford Township or its officials that caused the constitutional violations complained of.  Plaintiff only offers cursory allegations that Waterford Township had inadequate policies to supervise, train, and investigate its employees, without setting forth facts showing the existence of the offending policy or custom.  These conclusory allegations are insufficient to state a claim.  Taylor, 544 F.Supp. at 788.

Finally, Plaintiff has failed to present evidence of a direct nexus between Waterford Township's actions or inactions, and the subsequent harm claimed by Plaintiff.

## IV. CONCLUSION

For the reasons stated above, it is respectfully recommended that Defendants' Motions be **GRANTED** in part and **DENIED** in part.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of this recommendation that they may serve and file specific, written objections to the proposed findings

and recommendations.  Further, either party may respond to another party's objections within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Rule 6(b) of the Federal Rules of Civil Procedure, the Court, in its discretion, may enlarge the period of time in which to file objections to the report.

        s/Wallace Capel, Jr.
        **WALLACE CAPEL, JR.**
        **UNITED STATES MAGISTRATE JUDGE**

**Date:**  February 9, 2006

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on <u>February 9, 2006</u>, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: <u>William G. Pierson, 1200 North Telegraph Road, Dept. 419, Pontiac, Michigan 48341, and Joseph Seward, 33900 Schoolcraft Road, Livonia, Michigan 48150</u>.

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s):  <u>David C. Hardy, 783 Pike Street, Pontiac, Michigan 48342</u>  .

                                                <u>s/James P. Peltier</u>
                                                United States District Court
                                                Flint, Michigan 48502
                                                810-341-7850
                                                E-mail: pete_peltier@mied.uscourts.gov